[No. 21209. Department One. October 3, 1928.]

*In re* TAYLOR AVENUE ASSESSMENT.[1]

*Kerr, McCord & Ivey, Trefethen & Porterfield, Wright, Froude, Allen & Hilen, Preston, Thorgrimson & Turner, Donworth, Todd & Holman, Riddell & Brackett,* and *Warren H. Lewis,* for appellants.

*Thomas J. L. Kennedy, J. Ambler Newton,* and *John E. Sanders,* for respondent.

'Reported in 270 Pac. 827.

FRENCH, J.—This is an appeal from a judgment confirming an assessment roll made by the eminent domain commissioners of the city of Seattle. The assessments set out in the roll as thus prepared were to pay the expense of changing the grade and widening the streets in the district known as Denny Hill Regrade No. 2.

Originally, Denny Hill, situated generally north of Pine street and west of Westlake avenue, covered a large area; but in 1906 what is known as the old Denny Hill regrade took place and included the district north of Pine street and west of Fifth avenue, leaving that portion of the hill east of Fifth avenue and north of Virginia street ungraded; and it is now proposed to regrade this district, which contains some three hundred and sixty lots. The city council passed an ordinance in 1927 authorizing proceedings to widen the streets and lower the grades in this area, which ordinance directed condemnation and provided that the awards and all expenses of condemnation should be paid by the property specially benefited, and no portion of the cost should be paid from the general fund of the city. The total of assessments as shown by the roll is about one million, seven hundred thousand dollars.

The property assessed was divided into six districts: First, property east of Westlake avenue and of Fourth avenue; second, property south of Virginia street and west of Westlake avenue and Fourth avenue; third, property north of Virginia street and west of Fifth avenue, known as the old regrade district; fourth, property north of Harrison street and east of Ninth avenue to Westlake avenue; fifth, property in the hill area north of Denny Way; sixth, property in the hill area south of Denny Way.

This appeal does not affect any of the assessments

in the hill area to be actually regraded, or in the portion of the enlarged district north of Harrison street. The land of appellants is all situated in districts number one, number two and number three.

The objections raised by appellants are on the ground that their property is not specially benefited by the improvement, and particularly by that part of the improvement for which they are assessed; that the commissioners acted arbitrarily, abused their discretion and took into consideration matters remote and speculative; that they proceeded on a fundamentally wrong basis; and the Federal question is also raised that the assessment is contrary to and in violation of the fourteenth amendment to the Constitution of the United States.

From a careful examination of the testimony of the eminent domain commissioners, it becomes apparent that they were far from being united in their various theories of benefits accruing to appellants' property. All were united on the question of the benefits accruing to the property within the area to be regraded; but as to the property involved in this appeal, the theory of each of the commissioners as to benefits in many particulars differs from that of the others. It was a compromise roll, and only two commissioners approved and signed the roll as finally prepared. Some of the city's experts differ from the commissioners in many vital particulars as to the benefits accruing. The only theory on which appellants' property is assessed is that the improvements will provide ''improved access'' and a ''free flow of traffic'' and, also, that it tends to establish the business district and that it will provide room for a natural growth and legitimate expansion thereof.

The record is clear that the property in the regrade south of Denny Way bears its entire cost of this pro-

ceeding, and that appellants' property is not assessed to pay any part of the improvement south of Denny Way. The reading of the testimony of the witnesses for the city, coupled with the testimony of the commissioners themselves, shows that all the benefits which it is claimed will accrue to appellants' property would accrue if the regrade stopped at Denny Way. It is not claimed that the so-called first business area will, within the next twenty-five years, expand sufficiently to occupy the area south of Denny Way. The regrade north of Denny Way is admittedly for the purpose of removing an unsightly hill and permitting the residents of the northern part of the city freer access to the entire business area, both that involved in this proceeding and the so-called old business area of the city of Seattle which is not assessed.

The situation is disclosed by the testimony of one of the commissioners:

"The property to the south of Denny Way pays its own cost, the same as the old district No. 1; that is, the whole hill has divided itself into practically three parts. Part of it was regraded years ago. Now the property to the east of 5th avenue and south of Denny Way comes down and stands its cost. The territory from 5th to 9th avenues and from Harrison to Denny Way is not in this regrade because they needed the territory regraded but because it lay in the way of traffic from the north to the south of all this territory. The commissioners thought there was no justification in cutting 60 feet in some places and 30 in others to conform to the territory on the south end and improve it so traffic could come down to the south, and that territory has to be helped because it is so very far away from the business center or any prospective business that it cannot pay its own way. That was recognized from the first. If it had been off to one side we might have smoothed it down a little and let it go at that. We would only have extended the regrade to Denny

Way, and there is some general benefit to the city as a whole by it being cut through.''

Other testimony given by witnesses for the city clearly indicates that the commissioners took into consideration, in making the assessment on appellants' property, the building of the new Stoneway bridge, the physical removal of the earth from the several hundred lots included in the improvement district, and the bringing of the property generally down to grade, all matters of private contract not in any way included in the improvement and involving physical changes which may or may not take place, depending on the future action of certain governmental agencies and also on the financial ability and business judgment of many different individual lot owners. The assessment under such circumstances has been levied on a fundamentally wrong basis. *In re West Marginal Way,* 112 Wash. 418, 192 Pac. 961.

Referring to the ''increased access'' which the entire north end of the city will receive by reason of this improvement, especially from that part of the improvement north of Denny Way, (and it is for the cost of that part of the improvement that appellants are assessed), and which ''increased access'' seemed to be one of the fundamental reasons in the minds of all witnesses who testified in support of the roll, the commissioners testified generally that they were unable to assess the north district because this access as to such property was a general benefit. We think this position taken by the commissioners was right, but we also think it necessarily follows that, if the benefit of ''increased access'' is a general benefit to the property where the traffic originates by reason of the fact that it provides more convenient intervening streets, it must follow that it is only a general benefit to the already improved property receiving the traffic, all of

which it now receives in any event by reason of present existing streets. The city's witnesses claim that this hill has resulted in the deflection of traffic to the advantage of the two rapidly growing business districts on either side of the hill, and all of the witnesses agree that, if the hill remains, these two districts will continue to develop. Existing streets afford equal access to appellants' property as would exist with that portion of the hill regraded for which this assessment is levied, and the assessment can not be based upon traffic access, since the improvement does not initiate or create any new business or new traffic for the property assessed.

The part of the improvement for which this assessment is levied is in fact a general benefit. It is of benefit to the city as a whole and will help the city generally. Property can only be assessed if specially benefited, and it is not proper to include in an assessment district property which receives only general benefits. Rem. Comp. Stat., §§ 7790-7796; *In re Fifth Avenue & Fifth Avenue South,* 66 Wash. 327, 119 Pac. 852; *Norwood v. Baker,* 172 U. S. 269.

This regrade, if and when finally completed, will create out of what is now, practically speaking, worthless property in so far as any use thereof is concerned, three hundred and sixty business lots, all of which will be in direct competition with appellants' property. There seems to be no dispute in the testimony that the Westlake Market property owned by certain appellants has depreciated in value largely on account of and since the initiating of this improvement. This particular property now has the heaviest vehicular traffic of any portion of the primary business area, and pedestrian traffic is extremely heavy, having doubled within the past year. It has a side street 60 feet wide and the improvement will widen

that street to 90 feet; but the business fronts on Westlake Avenue and it is the proximity of the property to the center of the business area at Fourth and Westlake, together with the Westlake frontage that gives it its value. It can make no difference whether its side street is as at present 60 feet or, as the improvement contemplates, 90 feet. The evidence discloses that it can far more than take care of its traffic now, and that is all it can do when the improvement is in. This improvement will simply scatter the existing traffic over an enlarged area.

We think the situation as to the property of all the appellants was succinctly stated by the very able former engineer of the city of Seattle, Mr. R. H. Thompson, who testified:

"There is no part of the city brought to more convenient access to any new population center which would bring trade to this other part of the city. The regrade district does not open up any new lane of travel, which will bring a single customer to the property heretofore developed and lying outside of the area. People who will use these new streets that will be opened now use the other north and south streets, Westlake, Fairview, Eastlake, Dexter, Broad, and 5th, 4th and 3d.

"Another reason this outside district is not benefited is the fact that, when you put on a surplus amount of territory as business territory, you materially reduce the price of all the existing property in the neighborhood, so that the price of every lot in the general vicinity is reduced in selling price and the time in which it can be sold is extended into the future by reason of the surplus of business property on the market, and I think that rule applies here."

We think the record clearly discloses that the assessments as to appellants' property were levied and fixed on a fundamentally wrong basis, that no special benefit of any kind will accrue to any of appel-

lants' property; that such benefits as do accrue are clearly general benefits and the property is not chargeable therefor.

Reversed.

FULLERTON, C. J., PARKER, TOLMAN, and MITCHELL, JJ., concur.