[No. 31290.   Department Two.   January 11, 1951.]

LESTER S. MORSE *et al., Appellants,* v. NYLE WISE, *as Clerk and Treasurer of the Town of Chelan, et al., Respondents.*[1]

[1]Reported in 226 P. (2d) 214.

*Hall & Cole,* for appellants.

*Frederick M. Crollard, Jr.,* for respondents.

GRADY, J.—The appellants, property owners in the city of Chelan, brought this action in behalf of themselves and all others similarly situated, against the city officials to challenge the authority of the city to assess and collect from them sewer service charges. An appeal has been taken from the judgment dismissing the action.

Chelan is a city of the fourth class. It owns and operates a domestic water supply. In 1930 it created a local improvement district and constructed a sewer system. The district included substantially all of the then limits of Chelan, except South Chelan Addition. The cost of the sewer system was defrayed by local improvement assessments, except the part thereof consisting of the trunk sewer and the treatment plant. The cost of the latter was met by the sale of general obligation bonds. The assessments have been paid in full and the bonds have been retired. The annual maintenance cost has been paid from the general funds of the city.

Subsequent to 1930, areas adjacent to the city were settled and annexed. The absence of a sewer system in the annexed areas and South Chelan Addition created a health and sanitation problem. A portion of the trunk line and the treatment plant was not giving adequate service. The other parts of the original sewer system were giving proper service and had a life expectancy estimated to be forty years. An extensive study and survey was made for the purpose of devising what seemed to be the best method of meeting the situation. The formation of a local improvement district or districts was considered impractical when the cost of the improvements and the value of the properties to be assessed were considered. General obligation

bonds were out of the question because of constitutional debt limitations. If it was within the power of the people to vote a general obligation bond issue there seemed to be a serious question whether such bonds would be salable.

The most feasible alternative seemed to be to proceed pursuant to chapter 193 of the Laws of 1941 (Rem. Supp. 1941, § 9354-4 *et seq.*) This act authorizes cities or towns operating a water works utility to combine with such utility the sewer system serving its residents. It provides that the sewer system shall be considered as a part of, and belonging to, the water works utility of the city or town. The cost of construction of the sewer system, including additions, extensions or betterments thereto, and the maintenance and operation thereof, may be chargeable to the water works utility. The cities and towns are authorized to construct, add to, maintain, conduct, and operate systems of sewerage and systems and plants for refuse collection and disposal, together with additions, extensions and betterments thereto, within and without its limits, with jurisdiction and authority to manage, regulate and control the same and to fix, alter, regulate and control the rates and charges for the use thereof. A system of sewerage is defined to mean and include a system of sewers, outfalls, works, plants and facilities for sewage treatment and disposal, or any or all of such facilities.

The governing body of any city or town is authorized to create a special fund, or funds, for the sole purpose of defraying the cost of the public utility or additions, betterments or extensions thereto into which the gross revenue of the utility shall be paid, and to issue and sell bonds to be paid and retired out of a special fund. Any city or town is given authority to fix rates and charges for the furnishing of service to those served by the system of sewerage or system for refuse collection and disposal, but the rates and charges must be uniform for the same class of service. The advantages afforded by this act are that a city may combine both its water and sewer systems, make necessary improvements and additions to either or both, and pay the cost and expense thereof by the sale of revenue

bonds, and retire those bonds by charges collected for water and sewerage service.

On November 3, 1947, the city of Chelan enacted ordinance No. 210 providing for a sewage disposal system to be considered as a part of, and belonging to, the water works utility of the city. The ordinance provided for the construction and installation of additions and improvements to the water distribution system, consisting of a new pumping station with pumps and automatic chlorination and pump controls, a new connection to the distribution system, a new intake pipe in Lake Chelan, and the replacement of inadequate or worn out pipes. The sewage disposal system was to be improved by enlargements and improvements to the existing sewage treatment plant, and replacement of the existing raw sewage lift station sufficient for the existing sewer system and extensions thereof into theretofore unserved areas, and lateral extensions of the existing sewer system into areas not having any sewage disposal system. Provisions were made for the issuance of revenue bonds and the creation of a fund out of which the bonds would be retired. On April 5, 1948, the city enacted ordinance No. 212, which fixed rates and charges for water and sewer service and directed the payment thereof into the fund created by ordinance No. 210.

The additions and improvements provided by ordinance No. 210 were constructed and installed. The city proceeded to collect service charges for water and sewer service. The appellants and some others similarly situated, paid the sewer service charges under protest, and brought this action for a declaratory judgment to test the validity of such charges.

The appellants state in their brief that they do not question the imposition of a reasonable charge for the operation and maintenance of the original sewer system, as well as their fair share of the cost of new improvements from which they would receive a benefit, but they do object to paying any part of the cost and expense connected with the construction and installing of additions to the original

sewer system in the form of new mains and laterals capable of serving only new users, and which they state would be of no conceivable benefit to them and those similarly situated. No question seems to be raised about the improvements to the water system. The theory of the appellants is that, inasmuch as they are being served with an adequate sewer system for which they made payment by local assessments, they cannot be lawfully charged, through the medium of water and sewer service charges, to defray the expense of constructing a new sewer system for others, and that ordinance No. 212 is invalid. They also claim that, because they have a previously installed and paid for system of main and lateral sewers collecting and conveying sewage to the trunk line, they are not receiving the same class of service as those users who are provided with main and lateral sewers to their property, and that the city council abused its discretion in fixing rates and charges for sewer service to them without taking into consideration the mains and laterals acquired by them and the difference in class of service furnished.

We gather from the argument of appellants that they consider the sewer service charge to pay for the new sewers to be an assessment, and that as such it is illegal because they are not specially benefited. They contend that, having been assessed to pay the cost of the sewer system serving their properties, the only additional expense they can be called upon to pay is for repairs and maintenance of the mains and laterals, and a proper share to maintain trunk lines and a disposal plant serving them in common with others. They assert the legal justification for the making of such charges would be the special benefits conferred.

There would be merit to the first contention of appellants if the city had proceeded to make the improvements and construct a sewer system to serve the additional areas pursuant to local improvement statutes. The whole concept underlying Rem. Supp. 1941, § 9354-4 *et seq.*, is different from that of the local improvement district plan. Under these statutes, the city acts pursuant to the police power granted to it to provide sewer service to protect the

health of its inhabitants and to defray the expense by making service charges. The special benefit idea does not enter into the picture at all. We have examined the cases cited by appellants: *In re Grandview,* 118 Wash. 464, 203 Pac. 988; *In re Taylor Avenue Assessment,* 149 Wash. 214, 270 Pac. 827; *In re Aurora Avenue,* 180 Wash. 523, 41 P. (2d) 143, 96 A. L. R. 1374, and *In re California Avenue,* 30 Wn. (2d) 144, 190 P. (2d) 738, as well as those from other states. They are of no aid in the solution of the problem now before us, as they involve assessments according to special benefits where improvements were being made pursuant to statutes providing therefor.

The statutes pursuant to which the improvements provided for in ordinance No. 210 were made, authorize a different method of furnishing revenue to finance their construction and maintenance than is prescribed by local improvement statutes providing for assessments according to special benefits. Prior to the making of these improvements, the city had no occasion to make a service charge to appellants, as the maintenance costs were paid out of general funds; but under the plan authorized by the act of 1941 and provided by the ordinance, the service charges must be made to defray both construction costs and operation and maintenance. The act does not exclude sewer systems constructed pursuant to local improvement statutes, but it contemplates the raising of revenue by fixing rates and charges for the furnishing of service to all of those served by the system of sewerage as a whole. The rates and charges, however, must be uniform for the same class of service.

We find nothing in the statutes which prevents the city from making a service charge to appellants merely because the original cost of the sewers serving them was paid by local assessments according to special benefits.

We are not in accord with the views of appellants that the class of service furnished to them is different from that furnished to those served by the new construction. It is our opinion that the phrase "same class of service" as used in the act means that when a city classifies

those who receive sewer service into groups, such as owners of residences, or hotels and rooming houses, or business enterprises, or other groups which might be mentioned, then the rates for each class or group must be uniform. This is the theory upon which ordinance No. 212 is based. When we consider sewer service to the inhabitants of a city we must realize that some will require a greater amount of service than others, and therefore it is proper that the users of the sewers be divided into classes or groups according to use as near as it is possible or practicable so to do.

■ It was not necessary that the city council give consideration to the fact that appellants have been assessed for the cost of construction of the part of the sewer system serving them and their properties when fixing sewer service charges. The property owners did not "acquire" the mains and laterals when they paid the cost of construction. In fixing rates for service rendered in the whole area covered by the entire sewer system, the city council was required to determine what, if any, different classes of service existed, and then make the rates uniform for the same class of service. It was necessary to make the combined rates sufficient in amount to build up a fund with which to pay the revenue bonds and interest.

In fixing charges to be made to all of those served by the entire sewer system pursuant to the act of 1941, the city council is not authorized to either leave out of consideration altogether or make a different charge to some of the property owners because the part of the sewer system serving them was constructed under local improvement district statutes and ordinances, or to consider how long such sewer system might exist and function, or to consider any replacement value of it, or that it may be adequately serving the area covered, or that the additions to or extensions of the system covered areas not having sewer service. We reach this conclusion because the whole scheme and plan prescribed by the act of 1941 does not contemplate such factors having any place in the making up of sewer service charges.

■ Our attention is called to § 9, Art. VII of the constitution, which authorizes the legislature to vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessments. This, however, does not provide an exclusive method of defraying the cost of local improvements. Such local improvements as may be necessary in the promotion of health and sanitation may be authorized by the legislature in the exercise of its police power and its control over cities and towns, and provisions may be made for the defrayment of the cost of construction and operation and maintenance other than by local assessments.

The questions raised by appellants seem to be ones of first impression in this state. Our attention has not been called to any similar statute of any other state, nor to any case applying such a statute to any situation like the one before us. The legislature has supplied cities and towns with an additional method of raising revenue to defray the expense connected with sewage disposal facilities and to fix rates and charges for the use thereof. The sewer system serving appellants and those similarly situated was constructed by the city of Chelan, and although the greater part of the cost was paid by the property owners served, the city had control over it and had the duty to maintain it. The act gave the city the authority to integrate it into the later constructed sewer system and make a service charge to all whose property is served by the entire sewer system. We find no constitutional impediment to the enactment of the legislation. Ordinances No. 210 and No. 212 comply with the statutes and are valid.

The judgment is affirmed.

SCHWELLENBACH, C. J., MALLERY, ROBINSON, and HILL, JJ., concur.