[No. 51173-0.   En Banc.   August 8, 1985.]

KENNETH E. TETER, ET AL, *Appellants,* v. CLARK
COUNTY, ET AL, *Respondents.*

*R. DeWitt Jones,* for appellants.

*Arthur D. Curtis, Prosecuting Attorney, Richard S. Lowry, Deputy,* and *Jerry King, City Attorney,* for respondents.

PEARSON, J.—The primary issue in this case is whether

the charges imposed upon appellants by respondents to finance respondents' water management department are unconstitutional where appellants' properties do not receive any "special benefit" from the water management activities. A related issue is whether respondents' legislative determination that appellants' properties are located within the Burnt Bridge Creek drainage basin and contribute to an increase in surface water runoff is arbitrary and capricious. The final issue is whether respondents acted arbitrarily or capriciously in computing the rates and charges to be assessed against appellants' properties.

We hold that the "special benefit" requirement of article 7, section 9 of the Washington Constitution does not apply to rates or charges established pursuant to RCW 36.89.080 or RCW 35.67. We further hold that respondents did not act arbitrarily or capriciously in determining which properties should be charged for the water management program nor in computing the charges. We therefore affirm the trial court in every respect.

The Burnt Bridge Creek drainage basin is an approximately 27–square–mile area, partly in Clark County and partly in the city of Vancouver. In the past 30 years, much residential and light industrial–commercial development has occurred in this area. As the area developed, several storm sewer and sanitary sewer projects were completed; however, a large number of septic tanks were also permitted by the City and County.

As early as 1966, engineering studies showed that the danger of flooding and pollution in Burnt Bridge Creek, which flows into Lake Vancouver, was increasing as the development in the area progressed. Later engineering studies showed that the flooding and pollution problems throughout the entire drainage basin were worsening.

The County and City responded to these problems. In 1978, Clark County adopted two resolutions, pursuant to RCW 36.89, which formed a storm and surface water department for management of the entire Burnt Bridge Creek drainage basin. The County's preexisting water con-

trol facilities were made a part of the new water department by the resolutions. Similarly, the City of Vancouver passed an ordinance, pursuant to RCW 35.67, which created a storm and surface water utility and transferred all preexisting water control facilities to that new utility.

The County and City then entered into an interlocal agreement, pursuant to RCW 39.34, authorizing joint operation, management, and financing of the newly formed water department or utility. The County was designated to be the principal operator of the joint water utility.

The County subsequently adopted another ordinance, pursuant to RCW 36.89.080, which set the charges to be paid by property owners whose property lies within the drainage basin. Appellants' property is so situated. However, because appellants refused to pay the charges, respondents placed liens upon their properties, pursuant to RCW 36.89.090. Appellants brought an action for declaratory judgment, challenging, under the state and federal constitutions, the right of the respondents to impose the charges. Appellants also challenged the method used by respondents to compute the charges.

Both parties moved for summary judgment. The trial court granted respondents' motion as to the constitutionality of the charges and as to the validity of the method used to compute the charges. Appellants appealed; this court accepted the appeal as an administrative transfer from Division Two of the Court of Appeals.

## I

Appellants do not challenge that the City and County had statutory authority to form the water department. Rather, appellants challenge the inclusion of their properties among those which are to be charged for the operation of the department. Because their properties do not border on Burnt Bridge Creek, appellants argue that they do not specially benefit from the flood control services of the new water department. Furthermore, because their properties are served by sanitary sewers, appellants argue that their

properties do not contribute to the pollution of the creek. Appellants finally argue that their properties do not contribute to an increase in surface water runoff.

Therefore, appellants contend that the charges imposed by respondents violate Const. art. 7, § 9, which states:

Special assessments or taxation for local improvements. The legislature may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment, or by special taxation of property benefited. For all corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes and such taxes shall be uniform in respect to persons and property within the jurisdiction of the body levying the same.

Appellants are correct that a *special assessment* may only be charged against property which is specially benefited by the project. In *Heavens v. King Cy. Rural Library Dist.*, 66 Wn.2d 558, 563, 404 P.2d 453 (1965), this court stated that special assessments

are for the construction of local improvements . . . appurtenant to specific land and bring a benefit substantially more intense than is yielded to the rest of the [city]. The benefit to the land must be actual, physical and material and not merely speculative or conjectural.

However, an examination of the statutes under which Clark County and the City of Vancouver acted shows that the charges imposed here are not special assessments.

The City of Vancouver acted pursuant to RCW 35.67. That statute authorizes a city to form and operate a "system of sewerage" (which includes storm or surface water sewers, RCW 35.67.010(3)) and to charge "rates and charges" for the use of such systems. The rates and charges must be uniform for the same class of customers or service. RCW 35.67.020.

That statute's predecessor, which was worded identically to the current law, was construed by this court in *Morse v. Wise,* 37 Wn.2d 806, 226 P.2d 214 (1951). In that case, the city built new additions to an old sewer system. The property owners who had already paid for the *original* sewers

objected to paying for the additions, *which would only serve new users and would be of no benefit to them.* This court held that the statute authorizes the city to act under its *police power* and that the concept of special benefits was not relevant in that case.

> The whole concept underlying [RCW 35.67] *et seq.,* is different from that of the local improvement district plan. Under these statutes, the city acts pursuant to the police power granted to it to provide sewer service to protect the health of its inhabitants and to defray the expense by making service charges. The special benefit idea does not enter into the picture at all. We have examined the cases cited by appellants . . . They are of no aid in the solution of the problem now before us, as they involve assessments according to special benefits where improvements were being made pursuant to statutes providing therefor.

(Citations omitted.) *Morse,* at 810–11.

This court also stated in *Morse* that special assessments are not the exclusive means of financing local improvements; improvements necessary to health and safety may be authorized under the police power and paid for "other than by local assessments". *Morse,* at 813. In such cases, Const. art. 7, § 9 is not implicated.

Clearly, in the present case the *City* had statutory authority under RCW 35.67 to impose the charges. Further, in *Morse,* we upheld the constitutionality of such charges even where no special benefit is created for the property owners. Thus, the next question is whether the *County* also had statutory authority to impose the charges and whether those charges are constitutionally valid where no special benefit is created for appellants.

## II

RCW 36.89.030 authorizes counties to "establish, acquire, develop, construct . . . storm water control facilities". The statute authorizes several methods of funding: (1) issuance of general obligation bonds (RCW 36.89.040), (2) creation of utility local improvement districts and charging of special assessments (RCW 36.89.110), (3) issuance of revenue

bonds (RCW 36.89.100), and (4) adoption of a resolution "fixing rates and charges for the furnishing of service to those served or receiving benefits . . . or *contributing to an increase of surface water runoff*" (RCW 36.89.080). (Italics ours.)

Clearly, the County did not proceed under the special assessment section, RCW 36.89.110. No utility local improvement district was formed. Neither did the County proceed under methods 1 or 3 above, issuance of bonds.

Rather, the County chose to proceed under the rates and charges method specified in RCW 36.89.080. That section of the statute authorizes the county to charge not only for services supplied to property owners, but also based upon contribution to increase of surface water runoff by the properties. We hold that just as RCW 35.67 grants cities the police power to operate management systems for storm sewers, RCW 36.89 similarly gives the counties such police power.

Legislative intent to give the counties such police power is found in the statute. Significantly, RCW 36.89 states as among its purposes:

> The storm water control facilities within such county provide protection from storm water damage for life and property throughout the county, generally require planning and development over the entire drainage basins, and affect the prosperity, interests and welfare of all the residents of such county.

RCW 36.89.020.

Furthermore, the resolutions passed by the County pursuant to RCW 36.89 evidence an intended exercise of the police power. Clark County Resolution 1978–09–41 states:

> Clark County and . . . Vancouver have . . . cooperated in a joint program to implement a clean water program . . . toward the control of the runoff from . . . new development within the . . . basin, the storage of excess runoff . . . the provision of stream bank stabilization . . . the creation of vegetative buffers for temperature control and habitat enhancement . . . the treatment of first flush discharge from major storm drain systems . . .

That resolution further states that the basin

> constitutes a potential hazard to lives and property of County inhabitants, but that Burnt Bridge Creek itself and functionally related natural and man–made storm water control facilities constitute a storm water control facility . . . that effective regulation and control of storm and surface water . . . requires the establishment . . . of a storm and surface water department . . .

The police power is broad enough to encompass all laws tending to promote the

> health, peace, morals, education, good order and welfare of the people. . . . [T]he only limitation upon it is that it must reasonably tend to correct some evil or promote some interest of the state . . .

*Markham Advertising Co. v. State,* 73 Wn.2d 405, 421–22, 439 P.2d 248 (1968) (quoting *Shea v. Olson,* 185 Wash. 143, 53 P.2d 615, 111 A.L.R. 998, *adhered to on rehearing,* 186 Wash. 700, 59 P.2d 1183 (1936)), *appeal dismissed,* 393 U.S. 316, *reh'g denied,* 393 U.S. 1112 (1969). The cleanup by respondents of Burnt Bridge Creek and Lake Vancouver, along with measures to prevent flooding in the entire drainage basin, are well within the definition of police power as health, safety or welfare measures.

Notably, courts in other states have also held such charges to be valid when imposed as part of a general police power measure. In *Craig v. Macon,* 543 S.W.2d 772 (Mo. 1976), the court held valid the charges imposed by the city for solid waste disposal, even though *appellants did not have their garbage removed by the city* and thus obtained no "service". The Missouri Supreme Court held that the statute under which the city acted was a public health regulation, intended to protect the entire population. As a police power measure, the statute enabled the city to take whatever measures were reasonably required to meet the public health needs. The charges were only incidental to the regulatory scheme: the payments went only toward the costs of that program; none of the money went into general revenue. Thus, because the money was collected for a spe-

cific purpose (to pay the cost of a public health program) the charge was deemed valid.

The rationale of the *Craig* case applies to the instant case. RCW 36.89.080 requires that all charges collected be deposited in a special fund to be used only to pay the costs of maintaining and operating storm water control facilities. Therefore, as in *Craig,* the charge is properly characterized as a charge imposed to implement a health or safety law and is valid, even though appellants do not receive any *specific* "service". *See also Hobbs v. Chesport, Ltd.,* 76 N.M. 609, 417 P.2d 210 (1966). In *Hobbs,* the city enacted a garbage collection ordinance and charged property owners for collection; appellant property owners did not use the city's service. There the court held that a due process violation did not exist because the ordinance is a health measure and the charges are not merely for the specific act of garbage removal, but to defray the expenses of the entire program. Further, appellants received a *general* benefit from the removal of others' garbage—the control of insects, etc. *Accord, Cassidy v. Bowling Green,* 368 S.W.2d 318 (Ky. 1963); *Lake Charles v. Wallace,* 247 La. 285, 170 So. 2d 654 (1965); *Glendale v. Trondsen,* 48 Cal. 2d 93, 308 P.2d 1 (1957).

Accordingly, we hold that the County had statutory authority to impose the charges upon appellants and that those charges are constitutionally valid under the police power.

### III

The County determined that appellants' properties contributed to an increase in surface water runoff. We turn now to a review of the reasonableness of that decision by the County.

■ Where a court is asked to review a legislative decision, the applicable standard of review is the "arbitrary and capricious" test. *See Tarver v. City Comm'n,* 72 Wn.2d 726, 731, 435 P.2d 531 (1967). A legislative determination will be sustained if the court can reasonably conceive of *any* state

of facts to justify that determination. *Ace Fireworks Co. v. Tacoma,* 76 Wn.2d 207, 210, 455 P.2d 935 (1969). To be void for unreasonableness, an ordinance or resolution must be "clearly and plainly" unreasonable. *Ace Fireworks,* at 210. Thus, appellants have a heavy burden of proof that the respondents' actions were willful and unreasoning, without regard for facts and circumstances. *Miller v. Tacoma,* 61 Wn.2d 374, 390, 378 P.2d 464 (1963).

On the issue whether respondents' legislative determination was made in a reasonable manner, respondents submitted various documents related to their decisionmaking process. One such document was the deposition of John Ostrowski, Director of Public Works for the City of Vancouver and former Assistant Director of Public Works for Clark County.

In his deposition, Mr. Ostrowski identified the methods used by the County to determine (1) the boundaries of the Burnt Bridge Creek Utility, and (2) whether the properties included within those boundaries contribute to increased surface water runoff. One method utilized by the County was examination of contour maps of the drainage basin to determine the direction of the flow of surface water in that basin. The County then made in–field inspections to verify that the maps correctly identified the boundary lines of the basin. The County also made on–site inspections of a number of specific properties within the basin to ensure that the water runoff actually flows toward the creek. Thus, based on the contour maps, survey and engineering reports done by consulting firms in prior years, and on the County's numerous on–site property inspections, the County determined that appellants' properties contribute to surface water runoff in Burnt Bridge Creek drainage basin.

Certainly, the record shows that the legislative decision was not made in an arbitrary or capricious manner, without regard to facts and circumstances. Respondents considered the specific contours of the properties involved, utilized both standard engineering knowledge and engineering studies of the specific area, and performed in–field verifica-

tion of the drainage basin boundaries and water flow in arriving at the determination that appellants' properties contribute to increased surface water runoff. The resolutions involved here were passed at open meetings of the county commissioners. Accordingly, we find that the County acted upon a reasonable basis when it included appellants' properties among those which contribute to the increase in surface water runoff in the Burnt Bridge Creek drainage basin.

In support of their motion for summary judgment, appellants submitted affidavits from several of the appellants who live close to the creek. These affiants each indicated that no surface water flows from their properties into the creek and that all rain water percolates into the soil and the underlying gravel beds and is diffused by underground channels. Appellants now argue that these affidavits create a genuine issue of fact as to whether appellants' properties contribute to runoff in the basin.

Appellants' argument misconceives the nature of judicial review of a legislative decision. Because our review is limited to determining whether the ordinances and resolutions passed by respondents are arbitrary or capricious, we do not undertake to ascertain whether appellants' properties actually contribute to increased surface water runoff.

The affidavits of appellants have no bearing on the reasonableness of the respondents' decisionmaking process, which occurred several years prior to the swearing of those affidavits. The affidavits did not form a part of the data considered by respondents in making their decision and are thus not relevant to our review of that decision.

We have assured ourselves that respondents' decision to charge appellants for water management services was reasonable; our review ends at that point. Accordingly, because appellants have failed to meet their burden of proof that respondents acted in a willfully unreasonable manner when they included appellants' properties among those to be charged, we affirm the trial court's order of summary judgment on that issue.

## IV

We now turn to the question whether the method employed by the County to compute the charges was valid. Respondents based the charges on formulas devised after studies of engineering reference material, aerial photographs, contour maps, and on–site examinations of some of the properties within the drainage basin. Appellants argue that the rate scheme devised by respondents is arbitrary and capricious merely because no consideration was given to the individual characteristics of each of the properties charged.

■ Appellants carry the burden of proof that the rates are unreasonable. *Faxe v. Grandview*, 48 Wn.2d 342, 352, 294 P.2d 402 (1956). The rates are presumptively reasonable; they will be sustained unless it appears, from all the circumstances, that they are excessive and disproportionate to the services rendered. *Faxe*, at 352. We again apply the definition of "arbitrary" set out in *Miller v. Tacoma, supra* at 390: "wilful and unreasoning action, without consideration and regard for facts or circumstances."

In the present case, the County classified the properties, for purposes of computing the charges, based upon (1) the hydrologic impact of the development and use of the properties upon the peak rates of runoff and total quantity of runoff, and (2) water quality impacts. The annual charges were determined according to standard engineering knowledge regarding the estimated ratio of pervious to impervious land in each of the following categories: (1) single family residences; (2) residential duplexes, multi–family apartments, private schools; (3) retail, commercial, offices, hospitals, airports, utility stations; (4) industrial, manufacturing, railroad right of way. Thus, the charges are based on varying intensities of use and the relationship of that use to surface and subsurface water collection. Owners of all single family residence lots pay the same rate; owners of lots with more impervious surface (industrial, commercial) are charged more, depending on the size of the lot.

We find that the rate schedule bears a reasonable rela-

tion to the contribution of each lot to surface runoff. Respondents are not required to *measure each* residential lot to ascertain the *exact* amount of impervious surface on each one. Absolute uniformity in rates is not required. *See Morse v. Wise*, 37 Wn.2d 806, 226 P.2d 214 (1951). The rates for each class must be internally uniform, but different classes may be charged different rates. *Morse*, at 812. Further, only a *practical* basis for the rates is required, not mathematical precision. *See* Annot., *Validity and Construction of Regulation by Municipal Corporation Fixing Sewer–Use Rates*, 61 A.L.R.3d 1236, 1259 (1975); *Port Orchard v. Kitsap Cy.*, 19 Wn.2d 59, 141 P.2d 150 (1943).

Appellants have failed to show that the County acted arbitrarily in determining its rate schedule. The County has submitted numerous documents which show how and why the rate schedule was devised. The rate of $15 per year for each single family residence is not so excessive nor so disproportionate to the services rendered (overall drainage basin management) as to be called arbitrary. Appellants have not been able to prove that respondents acted in a willfully unreasonable manner, without regard to facts and circumstances, by merely asserting that the rates are arbitrary because respondents did not *individualize each rate*.

## V

Lastly, we consider the question whether these charges are actually taxes and if so, whether they are valid. We undertake this discussion as a point of clarification, since neither party has argued the question.

This court distinguished a "fee" from a "tax" in *Hillis Homes, Inc. v. Snohomish Cy.*, 97 Wn.2d 804, 650 P.2d 193 (1982). In *Hillis*, the counties involved passed ordinances which imposed "fees" on new residential developments as a condition of plat approval. These fees were to be used to pay for the additional services necessitated by the new developments. Significantly, the counties acted pursuant only to the general grant of police power in Const. art. 11,

§ 11; the counties did *not* have any *express* statutory or constitutional authority to impose the fees.

In distinguishing between a "fee" and a "tax", we stated that if charges are intended to raise money, they are actually taxes. Conversely, if the charges are primarily tools of regulation, they are not taxes. Finding that the ordinances in *Hillis* clearly provided that the fees be applied to offset costs of specific services, and that the ordinances *made no provision* for regulation, this court held that the fees were actually taxes. Because counties cannot impose taxes based only on a general constitutional grant of police power and no express authority existed to tax, we held the tax invalid.

Conversely, both the county resolution and the city ordinance in the present case refer to regulation and control of storm and surface waters. Furthermore, the Burnt Bridge Creek Interim Management Board Report[1] indicates that the purpose of the ordinances is regulatory, with the charges only being collected to pay for the necessary regulatory actions (*e.g.*, runoff control ordinances, erosion control ordinances, and septic tank regulations). As further evidence of regulatory intent, this report states at page 3 that the County will "[a]dopt a single plan for the drainage area that will govern the public and private actions in the basin."

Accordingly, because the primary purpose of these ordinances is regulatory, the charges are properly characterized as "tools of regulation", rather than taxes.

Even if the charges in the present case were actually

---

[1]The Interim Management Board was created by the County and City in their interlocal agreement of September 1979. This Board was composed of five members, two appointed by the City, two by the County, and the final member was appointed jointly by the Mayor of the City and the Chairman of the Board of County Commissioners. The Board studied the various aspects of operating the utility and reported its findings and recommendations to the City and County. The Board devised overall goals, funding plans and organizational structure for the utility.

taxes, these charges would not be automatically invalid. Unlike the situation in *Hillis,* RCW 36.89 expressly authorizes the county to impose these charges. However, if these charges are characterized as authorized taxes, the charges must be *uniform* as required by amendment 14 of our state constitution. That amendment states in part:

> All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax and shall be levied and collected for public purposes only.

Const. art. 7, § 1 (amend. 14).

In interpreting that amendment, this court has stated that absolute uniformity in taxation is not required. If the system is administered in a systematic, nondiscriminatory manner, it meets the requirement of amendment 14. *Sator v. Department of Rev.,* 89 Wn.2d 338, 344, 572 P.2d 1094 (1977). This court has also held that legislative bodies have broad power to classify for the purposes of taxation.

> While all taxes upon persons in the same class should be equal and uniform, the question of what persons shall constitute the class is one primarily for the legislature to determine . . . unless clearly arbitrary and without any reasonable basis.

*Pacific Northwest Annual Conference of United Methodist Church v. Walla Walla Cy.,* 82 Wn.2d 138, 144, 508 P.2d 1361 (1973) (quoting *Bates v. McLeod,* 11 Wn.2d 648, 120 P.2d 472 (1941)).

In the present case the rate classifications are based upon a determination that industrial, commercial, and other properties which are highly developed contribute more to water runoff, due to increased impervious surfaces, than do single family residential developments. All single family residential properties pay the same rate and the other properties pay according to a formula which applies equally to all properties in each category. The charge imposed is uniform as to each member of each category and is based on engineering studies and averages. Accordingly, even if the charges are characterized as taxes, they are both statu-

torily authorized and uniform, and are valid.

The order of the trial court is affirmed.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, CAL-LOW, GOODLOE, and DURHAM, JJ., concur.

ANDERSEN, J., concurs in the result.

Reconsideration denied September 20, 1985.