167 P.3d 1167 (2007)
TUKWILA SCHOOL DISTRICT NO. 406, Appellant,
v.
CITY OF TUKWILA, Respondent.
No. 58178-3-I.
Court of Appeals of Washington, Division 1.
June 11, 2007.
As Amended September 10, 2007.
Publication Ordered September 10, 2007.
*1168 Scott M. Edwards, Perkins Coie LLP, Seattle, WA, for Appellant.
Shelley Marie Kerslake, Kari L. Sand, Kenyon Disend PLLC, Issaquah, WA, for Respondent.
Thomas Aquinas Carr, Carlton W.M. Seu, Kent Charles Meyer, Seattle City Attorneys Office, Seattle, WA, Amicus Curiae on behalf of Washington State Assoc. of Municipal Att.'s.
Arthur David Curtis, Attorney at Law, E. Bronson Potter, Clark Co. Prosecuting Atty. Ofc., Vancouver, WA, Amicus Curiae on behalf of Washington Assoc. of Pros. Att.'s.
AGID, J.
¶ 1 Tukwila School District No. 406 (School District) filed a complaint against the City of Tukwila (City) for a declaratory judgment and tax refund challenging the City's Storm and Surface Water Utility Charge on the ground that it is an unlawful tax. The School District challenges the order dismissing its complaint on summary judgment on the ground that the trial court should have found the charge was a tax under the test set forth in Covell v. City of Seattle.[1] We hold the charge is not a tax under the Covell factors because its purpose is limited to protecting property owners and local water sources from harm caused by storm and surface water runoff, the City has segregated the funds and uses them only for this purpose, and the fee is roughly proportional to the amount of impervious surface on the property being taxed.
¶ 2 The School District also asserts that the trial court erred by admitting the expert testimony of Hector Cyre on the issue of the reasonableness of the fee. While Cyre's expert opinion was irrelevant to the issue before the court, the trial court expressly stated that it did not rely on this testimony to make its decision. Thus, any error is harmless. We affirm.

FACTS
¶ 3 Storm and surface water is the runoff from natural precipitation such as rain, snow *1169 melt, and other surface drainage. Urban storm water can cause flooding and create serious health, welfare and safety and water quality issues when it flows into gutters, ditches, creeks, streams, and rivers. There are two categories of storm water: point sources which can be traced to a single, identifiable location like a factory or refinery; and non-point sources (NPS) comprised of diffuse sources of water which pick up and carry pollutants while moving over and through the ground. Under the Clean Water Act (CWA), storm water from municipalities and certain industries is regulated as point sources of pollution which require municipalities to obtain National Pollutant Discharge Elimination System (NPDES) permits.[2]
¶ 4 In Washington, the Water Pollution Control Act (WPCA), chapter 90.48 RCW, implements the CWA. Under this chapter, Tukwila is required to maintain water quality and quantity standards to comply with WPCA under WAC 173-201A. Under RCW 35.67.020, the City owns, operates, and maintains a public storm and surface water system. Under chapters 14.28, 14.30, and 14.32 of the Tukwila Municipal Code (TMC), the City created a Storm and Sewer Water Utility (SSWU) that charges a fee to real property owners located in the City. Under TMC 14.32.030 the service charge applies to all land, but it is assessed based on the percentage of developed surface area per acre.[3] Under TMC 14.28.050(A), the SSWU charges are deposited in a segregated storm and surface water utility fund and are used to construct, operate and maintain the City's Storm and Surface Water Utility. TMC 14.32.060 provides for collection of this fee through liens imposed by the City that are foreclosed under the property tax lien foreclosure statutes. TMC 14.28.050(B) authorizes creation of other funds as necessary to administer the utility. TMC 14.28.060(B) mandates that storm and surface water fees "not be used for general or other governmental or proprietary purposes of the City, except to pay for the equitable share of the costs of accounting, management and government thereof incurred on behalf of the utility."
¶ 5 From 1999 through 2004, the School District paid $141,089.18 in storm and surface water charges. When it built Thorndyke Elementary School, the School District paid $191,000 as a building permit condition for improvements to the City's systems and amenities, including "storm drainage" at the adjoining public street. The City required the District to install storm water management systems at other schools to mitigate the impact on and use of the City's infrastructure.
¶ 6 At Showalter Middle School, a 2002 stadium renovation project revealed that the school was not connected to the City's adjoining stormwater pipe. In October 2003, a major storm caused a mud slide on a sloped area adjacent to Showalter Middle School that carried a portion of an adjoining public road into the City's storm and surface water infrastructure. The City billed the School District $45,662.97 for repairs. The City also required the District to design and construct a new storm and surface water system to control the surface water flowing into the City's infrastructure. The School District then filed this action against the City. The District asserts the storm and surface water utility charge is an unlawful tax imposed in violation of the uniformity requirement of article VII, section 1 of the Washington Constitution. It alleges that the charge was intended to generate revenue for government functions that should be supported by general tax revenue. It also claims there is no direct relationship between the fee and any services provided or burdens produced by real property owners, including the School District. It also asserts that the City imposed *1170 this fee even though some property owners built and maintained private storm or surface water infrastructures and did not connect to the City's storm and surface water facilities.
¶ 7 The parties filed cross-motions for summary judgment on the issue whether the charge is a permissible regulatory fee or an unconstitutional tax under the three-factor test established by the Washington State Supreme Court in Covell v. City of Seattle. The City submitted the deposition transcript and declaration of Hector Cyre, who provided an expert opinion about the reasonableness of the City's method of calculating the charges. The School District moved to strike Cyre's statements on the ground that the City failed to comply with the mandatory disclosure requirements for experts under KCLR 24 and that his statements were irrelevant, non-expert testimony. The trial court denied the School District's motion for summary judgment and motion to strike the Cyre Expert Report,[4] granted the City's cross-motion for summary judgment, and dismissed all of the School District's claims with prejudice. The School District appeals.

DISCUSSION
¶ 8 Summary judgment orders are reviewed de novo and are proper if, after reviewing all the documents on file, there is no genuine issue about any material fact and the moving party is entitled to a judgment as a matter of law.[5] All facts and inferences are viewed in a light most favorable to the nonmoving party.[6] Summary judgment is proper when reasonable persons could only reach the conclusion that the nonmoving party is unable to establish any facts that would support an essential element of its claim.[7]
Covell Three-Prong Test
¶ 9 The School District challenges the trial court order dismissing its claim on the ground that Tukwila's storm and surface water charge is a tax under the test set forth in Covell v. City of Seattle and its progeny, Samis Land Co. v. City of Soap Lake,[8] and Arborwood Idaho, L.L.C. v. City of Kennewick.[9] It argues the charge fails all three prongs of the Covell test because it was (1) imposed to generate revenue for public infrastructure rather than to regulate the activities of payers; (2) the funds assessed are not spent on the regulated entity or activity; and (3) there is no direct relationship between the fee assessed and the service received or burden created because all real property owners in Tukwila, including owners of undeveloped land and land serviced by private storm water infrastructures, are assessed. In response to the arguments presented by Amici, the School District emphasizes that its challenge is limited to the Tukwila ordinance and will not have widespread effect on other municipalities.
¶ 10 The City counters, arguing that its storm water charge is a regulatory fee under Covell because: (1) an incidental public benefit does not destroy the fee's primary purpose of regulating the activities on developed properties and the detrimental impact these properties have on storm and surface water runoff; (2) monies collected are allocated to a segregated fund and used only for activities and capital improvements related to storm and surface water management activities; and (3) there is a direct relationship between the fee imposed and both a service received by fee payers and a burden to which they contribute. They contend the fee pays to control storm and surface water caused by impervious surfaces which in turn cause increased rates and volumes of runoff and pollutants discharged by the property.
*1171 ¶ 11 In its amicus brief, the Washington Association of Prosecuting Attorneys (WAPA) asserts that the term "regulate," as used in Covell, is not limited to simply restricting or prohibiting activities, and regulatory fees include those which provide the fee payer with a targeted service or reduce an impact the fee payer created. Relying on Franks & Son, Inc. v. State,[10] WAPA argues that the City is not using the fees it collects for a general governmental purpose but rather to construct, operate, and maintain storm-water facilities that provide services to the fee payers and reduce the stormwater impacts they create. It asserts that these fees may properly be used to construct infrastructure and argues that the amount of the fees is supportable because the fee is based on the amount of impervious surface, which generates the runoff, present on the property. WAPA and the City focus on the decisions in Teter v. Clark County,[11]Smith v. Spokane County,[12] and Dean v. Lehman,[13] which ruled that any incidental general public benefit does not destroy the regulatory nature of a fee like this one because it would be hard to imagine a regulatory fee that did not produce some benefit to the general public. The Washington State Association of Municipal Attorneys (WSAMA) argues in its amicus brief that the plain language of chapter 35.67 RCW authorizes all Washington cities and towns to construct public utilities that manage storm water drainage and sanitary sewage disposal treatment and to charge regulatory fees, rather than taxes, to pay for building and operating these utilities.
¶ 12 The interpretation of statutes and municipal ordinances is a question of law.[14] The party challenging an ordinance bears the burden of establishing its unconstitutionality.[15] Like statutes, municipal ordinances are presumed constitutional, and courts interpret ordinances in a manner which upholds their constitutionality if possible.[16]
¶ 13 RCW 35.67.010(3) authorizes cities to create storm and surface water systems. Cities and towns are authorized to construct and operate these systems under RCW 35.67.020(1). RCW 35.67.020(2) requires that all rates be uniform and lists factors for a city's legislative body to consider when setting the fees. The statute also restricts fees for on-site inspection and maintenance services for development, construction, or reconstruction of property.[17] Subsection (3) governs fees for storm or surface water sewer systems and requires reduced rates and charges for new or remodeled commercial building owners who use permissive rainwater harvesting systems.[18] Under RCW 35.67.120, cities are authorized to create a special fund to defray the "cost of the proposed system, or additions, betterments or extensions" to the system. As such, they may rely on user fees rather than the city's general fund to pay for storm and surface water facilities. The statute does not require city legislatures to reduce the fee if a real property owner installs a private stormwater facility.
¶ 14 But the statutory authorization does not end the inquiry. To decide whether the charge is a tax or a regulatory fee, courts apply the three-part test articulated in Covell v. City of Seattle.[19] Under this test, the first question is whether the primary purpose of the municipality is to "regulate" the fee payers or to "collect revenue to finance broad-based public improvements that cost money."[20] *1172 The second question is whether the money collected is segregated and allocated exclusively to regulating the entity or the activity being assessed.[21] The third factor examines the direct relationship between the rate charged and either a service received by the fee payers or a burden to which they contribute.[22]
¶ 15 The School District relies on three primary cases to support its argument: Samis, Arborwood and Okeson v. City of Seattle.[23] In all three cases, the Washington Supreme Court held the challenged regulatory fee was a tax because one or more of the Covell factors was not satisfied. While the School District's argument has some appeal initially, none of these cases actually supports its position.
Primary Purpose
¶ 16 Under Covell, we must first determine whether the City's primary purpose in enacting the storm and surface water charge was to finance broad-based public improvements or to regulate the fee payers or their activities.[24] This is a close question, but based on the authorizing legislation, we believe the real purpose of the fee is, like other utilities, to provide a service to and relieve a burden created by property owners whose impervious surfaces contribute directly to runoff and pollution problems in Tukwila. Tukwila Municipal Code 14.32.010(A) states that the purpose of the charge is to "provide for revenue to construct, reconstruct, replace, improve, operate, repair, maintain, manage, administer, inspect, enforce facilities and activities for the storm and surface water utility plan and utility." The School District argues that the first Covell factor is not met because the plain language of the ordinance focuses on raising money rather than regulating property owners' activities or limiting their use of the public storm water infrastructure. Specifically, it asserts that the ordinance fails the first prong of Covell because its purpose is to "provide for revenue." But in Holmes Harbor Sewer District v. Frontier Bank, we rejected this argument and held that the "statutory term `revenue' is not the significant term in the first part of the test." Rather the significant issue is the City's purpose in collecting the revenue.[25]
¶ 17 The School District also compares the charges imposed here to the streetlight charge in Okeson v. City of Seattle. There, the Supreme Court held that the fee was an unconstitutional tax because it transferred the cost of streetlights, a recognized general governmental function, from the City of Seattle's general budget to Seattle City Light customers.[26] But that same case lists storm water facility charges as one of the legitimate regulatory fees.
[t]his court collectively refers to nontax charges by a governmental entity as "regulatory fees," a rather broad category that can "include a wide assortment of utility customer fees, utility connection fees, garbage collection fees, local storm water facility fees, user fees, permit fees, parking fees, registration fees, filing fees, and license fees."[[27]]
¶ 18 Charges imposed for purposes other than raising money for the public treasury, such as those used to regulate or alleviate the burden from an activity, are not taxes subject to constitutional taxation constraints.[28] The City has a comprehensive storm and surface water plan, codified in *1173 TMC chapters 14.28, 14.30, and 14.32.[29] The plan outlines not only the purpose of the charge and the rate structure but also how the utility will regulate and process storm drainage. The City asserts that the School District places undue emphasis on the revenue-generating nature of the fees and ignores its overall plan. It also argues that one purpose of the fee is to regulate the flow of storm and water surface runoff. Tukwila charges a fee only to those land owners with developed, impervious surfaces. By restricting the fee, the City is regulating only those activities that contribute to the storm and surface water runoff the City must control and treat under its NPDES permit.[30]
¶ 19 In Smith v. Spokane County,[31] we rejected the plaintiff's argument that the fees charged in the Spokane-Rathdrum Aquifer Protection Area were not regulatory because they were used to protect the aquifer from sewage pollution. Likewise, in Hillis Homes, Inc. v. Public Utility Dist. No. 1,[32] the Supreme Court upheld charges for the city's water system as a valid regulatory fee authorized by state statute. So too here, the purpose of the storm and surface water charge is to protect local water sources, including the Green River, from pollutants caused by storm and surface water runoff discharged by developed property with impervious surfaces. Because owners of those properties contribute to that problem, the City can properly charge a fee to defray the cost of ameliorating it. We hold that the primary purpose of the City's storm and surface water charge is to regulate runoff. As such, it satisfies the first Covell factor.[33]
Segregation of Funds
¶ 20 To satisfy the second prong of the Covell test, the money collected from the fees must be segregated and allocated exclusively to regulating "`the entity or activity being assessed.'"[34] The School District asserts that, although the fees collected are deposited into a segregated single-purpose account, the only valid use of a regulatory fee is to regulate the entity or activity being assessed and the money cannot be used to pay for public infrastructure. The City argues that because all disbursements are for expenditures related to storm and surface water, including the design and construction of capital facilities necessary to convey the waters and the acquisition, maintenance, operation, improvement, and administration of the utility, the fees are used to regulate the activity being assessed.
¶ 21 The School District's argument that the City cannot use funds generated by fees on capital projects related to storm and surface water facilities is not persuasive. A system designed to collect, treat and discharge water cannot exist without the infrastructure to which the School District objects.[35] The construction of capital facilities is a recognized regulatory activity.[36] RCW 35.67.020(1) authorizes cities to "construct . . . purchase, acquire, add to, maintain, conduct, and operate systems of sewerage [including storm and surface water systems] . . . together with additions, extensions, and *1174 betterments thereto." Further, like sanitary sewer systems, storm and surface water systems require pipes, drains, pump stations and other components to drain and divert the flow of surface water. The School District does not provide any evidence that the funds are not being used for the storm and surface water facilities. Accordingly, we hold that the Tukwila ordinances satisfy the second Covell factor.
Direct Relationship
¶ 22 Finally, we must determine whether there is a direct relationship between the fee charged and either a service property owners receive or a burden to which they contribute to satisfy the third prong of the Covell test.[37] The School District argues there is no direct relationship because the fee is not based on the cost of providing a targeted service, but was calculated by dividing the annual revenues the City thought it needed to construct the system by the estimated number of parcels in the city with impervious surfaces. This, the District argues, is not a fee for services rendered but is more like a tax that cannot be avoided.[38] Further, like a tax, all real property owners within the Tukwila city limits are assessed and cannot avoid the fee even if they are served by a private storm water system.
¶ 23 The City argues that its regulatory scheme has a direct relationship to the services property owners receive in controlling storm and surface water runoff and the burden they create by increasing the rate and volume of surface and storm water runoff and pollutants. This case is not like Samis, where the City of Soap Lake charged a fee to owners of vacant, unimproved, uninhabited lots that abutted but were not connected to the city's water and sewer lines.[39] Here, the City charges the fee to real property owners with impervious surfaces on their land because these surfaces require storm and surface water systems to alleviate the burdens their presence imposes on neighboring land. We agree with the City that it rains everywhere and all parcels within the City benefit from a system that manages the quantity and quality of storm and surface water runoff to prevent flooding, erosion, sedimentation, pollution, and danger to life and property. While there is certainly an overall public benefit, the fees assessed are still based on the amount and rate of runoff a parcel of property generates. As with garbage removal, there is a benefit to the public-at-large from having the City provide garbage removal that is paid for based on the amount of waste generated. So long as the rate is reasonably based on usage  i.e., the amount of the property owner's contribution to the problem  the fee is directly related to the service provided.
¶ 24 Under RCW 35.67.020(3), a reduction in this fee is available for landowners who harvest rainwater, but the statute does not provide a similar fee reduction for those who install private stormwater facilities. The School District argues it should not have to pay the fees because the City has already required it to build expensive retention/detention systems to contain the storm and surface water its properties generate. The problem with this argument is that private systems do not eliminate the District's impact on the storm and surface water utility. The City requires some landowners with significant impervious surfaces on their property to build surface and stormwater systems on their own property to reduce the rate at which water flows into the municipal system. But this does not eliminate the problem. Retention/detention systems merely slow the flow of storm and surface water entering the system. Ultimately, it must all flow through the City's system. On the other hand, rainwater harvesting systems remove water from *1175 the storm and surface water system, and landowners who use them pay reduced fees because they have reduced their impact on the system. Accordingly, the City may reduce fees for rainwater harvesting but not do so for private surface and storm water retention and detention systems which are designed to slow, rather than eliminate, the rate of rainwater flow into the system. There is a direct relationship between the fee charged and the service provided, so the third Covell test is satisfied.
Motion to Strike
¶ 25 At the hearing, the trial court and the City agreed that the issue before it was not whether the fees were arbitrary and capricious. Rather, the parties focused on whether, under Covell, the disputed charge was a fee or a tax. At the hearing, the court also stated that Cyre's declaration appeared to be cumulative of other evidence and contained some legal conclusions the court would disregard. When the trial court declined to strike the City's expert's declaration and Report, it stated that they
did not play any role in the Court's decision. If it had not been there, I don't think the ruling would have been any different. I did regard it as cumulative of of other factual information. And I think, basically, as counsel on both sides have advise[d], there's not a lot of dispute about the factual information. . . . I don't think that Mr. Cyre's declaration matters one way or the other, but I'll leave it there.
I would specifically indicate though the Court certainly would not look to Mr. Cyre for any legal advice that might appear to be contained in that declaration.
¶ 26 The parties raise several arguments about whether the trial court should have stricken the declaration and Report because disclosure was untimely or they were irrelevant to the issue before the court. We need not address these arguments because, while they were irrelevant and should have been stricken because the calculation of the storm and surface water fee was not at issue, any error was harmless because the court expressly stated that Cyre's documents and opinions played no part in its decision.
¶ 27 We affirm.
WE CONCUR: COX and BAKER, JJ.
NOTES
[1] 127 Wash.2d 874, 905 P.2d 324 (1995).
[2] 33 U.S.C. §§ 1251-1387.
[3] 14.32.030 Utility Rates and Service Charges

A. A utility rate and service charge is imposed on every parcel within the City and the owner(s) thereof. . . .
B. The rate category established herein shall be based upon the contribution of surface and storm water from a parcel to the system. The amount of contribution to the system shall be measured by the estimated percentage of developed surface area on the parcel. . . . This rate category and service charge is determined by estimating the average percent developed surface and the average total area of all single-family parcels in the City.
[4] In its oral ruling on March 10, 2006, the court stated that the Cyre declaration "did not play any role in the Court's decision."
[5] CR 56(c); Lybbert v. Grant County, 141 Wash.2d 29, 34, 1 P.3d 1124 (2000).
[6] Reid v. Pierce County, 136 Wash.2d 195, 201, 961 P.2d 333 (1998).
[7] Young v. Key Pharms., Inc., 112 Wash.2d 216, 225, 770 P.2d 182 (1989) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).
[8] 143 Wash.2d 798, 23 P.3d 477 (2001).
[9] 151 Wash.2d 359, 89 P.3d 217 (2004).
[10] 136 Wash.2d 737, 750, 966 P.2d 1232 (1998), cert. denied, 526 U.S. 1066, 119 S.Ct. 1458, 143 L.Ed.2d 544 (1999).
[11] 104 Wash.2d 227, 704 P.2d 1171 (1985).
[12] 89 Wash.App. 340, 351, 948 P.2d 1301 (1997), review denied, 135 Wash.2d 1007, 959 P.2d 125 (1998).
[13] 143 Wash.2d 12, 18 P.3d 523 (2001).
[14] Ball v. Smith, 87 Wash.2d 717, 722, 556 P.2d 936 (1976).
[15] City of Tacoma v. Luvene, 118 Wash.2d 826, 841, 827 P.2d 1374 (1992).
[16] Leonard v. City of Spokane, 127 Wash.2d 194, 197-98, 897 P.2d 358 (1995).
[17] RCW 35.67.020(4).
[18] RCW 35.67.020(3).
[19] 127 Wash.2d 874, 879, 905 P.2d 324 (1995).
[20] Samis Land Co., 143 Wash.2d at 806, 23 P.3d 477 (citing Covell, 127 Wash.2d at 886, 905 P.2d 324).
[21] Id. at 806, 905 P.2d 324.
[22] Id.
[23] 150 Wash.2d 540, 78 P.3d 1279 (2003).
[24] Samis Land Co., 143 Wash.2d at 806, 23 P.3d 477.
[25] 123 Wash.App. 45, 53, 96 P.3d 442 (2004), reversed on other grounds by, 155 Wash.2d 858, 123 P.3d 823 (2005).
[26] Okeson, 150 Wash.2d at 551-52, 78 P.3d 1279.
[27] Id. at 552, 78 P.3d 1279 (quoting Samis, 143 Wash.2d at 805, 23 P.3d 477).
[28] Okeson, 150 Wash.2d at 552, 78 P.3d 1279 (citing Samis, 143 Wash.2d at 805, 23 P.3d 477).
[29] We may consider the City's overall plan in determining the purpose of a challenged fee. Id.
[30] This fact distinguishes our case from Arborwood where the City of Kennewick charged property owners for municipal services they did not use. 151 Wash.2d at 369-371, 89 P.3d 217.
[31] 89 Wash.App. at 350, 948 P.2d 1301.
[32] 105 Wash.2d 288, 299, 714 P.2d 1163 (1986).
[33] Samis, 143 Wash.2d at 805, 23 P.3d 477 (recognizing that regulatory fees include "a wide assortment of utility customer fees, utility connection fees, garbage collection fees, local storm water facility fees, user fees, permit fees, parking fees, registration fees, filing fees, and license fees.") (emphasis added).
[34] Samis, 143 Wash.2d at 810, 23 P.3d 477 (quoting Covell, 127 Wash.2d at 888, 905 P.2d 324) (emphasis omitted).
[35] This argument really relates to the School District's disagreement with the purpose of the fee, i.e., to build and maintain facilities that are part of the City-wide infrastructure. In the District's opinion, regulatory fees should be limited to charges for a discrete, direct service like development permits or garbage collection. This interpretation is too literal to find support in our case law.
[36] See Morse v. Wise, 37 Wash.2d 806, 226 P.2d 214 (1951).
[37] Samis, 143 Wash.2d at 806, 23 P.3d 477.
[38] The School District is correct in arguing that the City cannot simply divide desired revenue by parcels subject to the fee and satisfy the "direct relationship" requirement. And it does appear that in 1989, before it adopted the ordinances which create and regulate the storm and surface water utility, the City did in fact set the fee in the manner the School District describes. But that is a target gone by at this juncture because the City has adopted a refined fee schedule based on the degree to which properties contribute to the runoff problem.
[39] Samis, 143 Wash.2d at 811-13, 23 P.3d 477.