[No. 16486-1-III. Division Three. November 18, 1997.]

SANDRA SMITH, *Appellant,* v. SPOKANE COUNTY, ET AL., *Respondents.*

*Stephen K. Eugster* of *Eugster, Haskell* for appellant.

*Thomas F. Kingen* and *James P. McNeill, Jr.* of *Perkins Coie; James R. Sweetser, Prosecuting Attorney* and *James P. Emacio, Deputy*; and *James C. Sloane, City Attorney*, and *Stanley M. Schwartz, Assistant*, for respondents.

ZAGELOW, J. * — Sandra Smith filed a class action lawsuit against Spokane County and the City of Spokane challenging the fees imposed on water and sewer customers within the Spokane-Rathdrum Aquifer Protection Area (APA). The trial court entered an order of summary judgment dismissing her claim. She appeals contending that (1) the charge is an unconstitutional tax; (2) the charge violates due process and equal protection; (3) the charge is an unlawful special assessment; (4) the charge is an unlawful taking; (5) the charge is unreasonable; (6) the charge violates the principle of tax fairness; (7) APA funds cannot finance APA projects; (8) the charge violates the one percent levy limitation; (9) APA funds are being used for unauthorized purposes; (10) the County has failed to actively collect APA fees; and (11) the court erred by dismissing the City as a party to this action. We affirm.

## FACTS

In May 1985, the Washington State Legislature adopted RCW 36.36, which allows counties to create "aquifer protection areas for the purpose of funding the protection, preservation, and rehabilitation of subterranean water." RCW 36.36.020; LAWS OF 1985, ch. 425, § 2. The statute permits aquifer protection areas to impose fees in order to fund (1) the preparation of a comprehensive plan to protect, preserve, and rehabilitate subterranean water; (2) to

---

*Judge Robert L. Zagelow is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

construct facilities for removal of pollution, water quality improvement, and for the collection, disposal and treatment of sanitary sewage and storm water; (3) the proportionate reduction of special assessments imposed by a municipality for such facilities; (4) the costs of monitoring and inspecting on-site sewage disposal systems or community sewage disposal systems; and (5) the costs of monitoring the quality and quantity of subterranean water and analyzing data, implementing the comprehensive plan, enforcing compliance with standards, and public education. RCW 36.36.040. To create an aquifer protection area, a county must conduct a public hearing, adopt a resolution, and submit the issue to a vote of the electorate in the proposed protection area. RCW 36.36.020. The ballot proposition must ask the voters if the aquifer protection area shall be created and authorized to impose monthly fees on the withdrawal of water and/or on-site sewage disposal not to exceed a specific amount per household unit to finance specified activities. RCW 36.36.020.

In July 1985, the Spokane County Commissioners passed a resolution proposing the creation of the Spokane-Rathdrum Aquifer Protection Area (APA) and the imposition of fees for water withdrawal and on-site sewage disposal. The protection area includes property in the City of Spokane and the Town of Millwood, as well as unincorporated areas of the County. The proposal was approved in the September 1985 election with a 74.7 percent yes vote. Under the fee structure approved by the voters, each occupied household unit is charged $1.25 a month ($15 per year) for the withdrawal of water and $1.25 a month ($15 per year) for on-site sewage disposal, regardless of the amount of water used, or whether the household is served by a septic system or a municipal sewer line. The fees will be imposed for up to 20 years. Households served by the City of Spokane sewage system, Liberty Lake Sewer District sewage system, or the Town of Millwood sewage system are not subject to the sewage disposal fee. The fee for each nonhousehold unit is based on the size of the water meter serving the property. Fees are imposed once a

certificate of occupancy is filed on a particular piece of property. The fees are billed on a yearly basis.

Between 1986 and 1995, the County collected approximately $23.6 million in aquifer protection area fees. Seventeen percent of the revenue was used for operations and administration. Two percent was distributed to the Spokane County Health District for water quality monitoring. Eighty-one percent of the fees were spent on sewer construction in order to minimize sewage pollution. $15.9 million was spent for sewer construction within the County, $3.6 million was spent for sewer construction in the City of Spokane, and $585,000 was spent for sewer construction in the Town of Millwood.

In December 1995, Sandra Smith, a resident of the City of Spokane, filed a class action suit against the City and the County challenging the fees on a number of grounds and seeking recoupment of the fees paid in the last three years, as well as attorney fees and costs. The court entered an order dismissing the City from the lawsuit. The trial court also entered an order of summary judgment dismissing the case. Ms. Smith now appeals.

## DISCUSSION

When reviewing an order of summary judgment the appellate court engages in the same inquiry as the trial court. *Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 48, 914 P.2d 728 (1996). Summary judgment is appropriate only when no questions of material fact exist. CR 56(c); *Degel*, 129 Wn.2d at 48. The court must consider all of the facts and reasonable inferences in the light most favorable to the nonmoving party. *Id.* Summary judgment in this case is appropriate only if this court determines, after viewing all of the evidence in the light most favorable to Ms. Smith, that no material questions of fact exist.

Ms. Smith argues that summary judgment was inappropriate in part by attacking the constitutionality of the statute and enactments which permitted the County to

create the APA. The interpretation of a statute or municipal enactment is a question of law for the court. *Ball v. Smith*, 87 Wn.2d 717, 722, 556 P.2d 936 (1976). A statute is presumed to be constitutional and the party attacking the statute bears the burden of establishing its unconstitutionality beyond a reasonable doubt. *Leonard v. City of Spokane*, 127 Wn.2d 194, 197-98, 897 P.2d 358 (1995). Municipal ordinances are afforded the same presumption of constitutionality. *Brown v. City of Yakima*, 116 Wn.2d 556, 559, 807 P.2d 353 (1991). Whenever possible an enactment must be interpreted in a manner which upholds its constitutionality. *City of Tacoma v. Luvene*, 118 Wn.2d 826, 841, 827 P.2d 1374 (1992).

■ Ms. Smith argues that the APA charges imposed by the County are not fees, but rather an unlawful property tax. Washington's Constitution requires that all taxes be imposed at the same rate based upon the value of the property. Const. art. VII, § 1. Since the APA fee is the same for all property owners regardless of property value, if it were deemed a tax it would be unconstitutional. *See Covell v. City of Seattle*, 127 Wn.2d 874, 878, 905 P.2d 324 (1995). If the APA charge is a regulatory fee, then it would be permissible under the County government's general police powers. Const. art. XI, § 11; *Covell*, 127 Wn.2d at 878; *Margola Assocs. v. City of Seattle*, 121 Wn.2d 625, 634, 854 P.2d 23 (1993). Thus, the primary issue in this case is whether the APA fees charged by the County are regulatory fees or taxes.

■ ■ Whether a charge imposed by a governmental entity is a tax or regulatory fee depends on three factors. *Covell*, 127 Wn.2d at 879. The first factor to consider is whether the primary purpose of the County is to accomplish desired public health benefits which cost money, or if the purpose is to regulate. *Id.* If the primary purpose is to raise revenue rather than to regulate then the charge is a tax; but if the purpose is regulatory then the charge is deemed a fee. *Id.* The second factor to consider is whether the money collected is allocated only for authorized regulatory

purposes. *Id.* The third factor is whether there is a direct relationship between the fee charged and (1) the service received by those who pay the fee, or (2) the burden produced by the fee payer. *Id.*

The County imposed this fee under the authority of RCW 36.36. The stated purpose of that chapter is:

> The protection of subterranean water from pollution or degradation is of great concern. The depletion of subterranean water is of great concern. The purpose of this chapter is to allow the creation of aquifer protection areas to finance the protection, preservation, and rehabilitation of subterranean water, and to reduce special assessments imposed upon households to finance facilities for such purposes. Pollution and degradation of subterranean drinking water supplies, and the depletion of subterranean drinking water supplies, pose immediate threats to the safety and welfare of the citizens of this state.

RCW 36.36.010. APA areas may impose fees to fund (1) the preparation of comprehensive plans to protect, preserve, and rehabilitate the water source; (2) the construction of facilities to remove water pollution, improve water quality, increase sanitary sewage collection, disposal and treatment, and increase storm water or surface water drainage collection, disposal and treatment; and (3) the costs of monitoring and inspecting on-site sewage disposal systems for compliance with rules. RCW 36.36.040.

Ms. Smith argues that the primary purpose of RCW 36.36 is to finance the construction of facilities within the APA. She relies heavily on the legislative history to this statute to support her argument. When a statute is ambiguous courts may look to the legislative history. *Washington Fed'n of State Employees v. State*, 98 Wn.2d 677, 684, 658 P.2d 634 (1983). Although we do not find the statute ambiguous, the legislative history does not support Ms. Smith's contention. The legislative history indicates that this bill was introduced due to the pollution and degradation of the sole water source in the Spokane area. Although there was some disagreement with the bill because of the fees which could

be imposed, the overall purpose was to regulate water sources. Courts should consider the overall plan when reviewing whether a charge is a fee or a tax. *See Hillis Homes, Inc. v. Public Utility Dist. No. 1,* 105 Wn.2d 288, 299, 714 P.2d 1163 (1986) (*Hillis* II). Considering the wording of the statute and its legislative history, the overall purpose of RCW 36.36 is regulatory.

Ms. Smith further argues that the purpose of the Resolution which the County enacted was to raise revenue to pay for activities not associated with the withdrawal of water from the aquifer. The purpose of the resolution was to "protect the subterranean Spokane water source from further pollution or degradation by providing monies for the protection, preservation and rehabilitation of such water source . . . ." In 1978, the federal Environmental Protection Agency determined that the Spokane-Rathdrum Aquifer was the sole source of water for the Spokane and Coeur d'Alene area. The aquifer was being polluted by sewage. The County has used the APA fees to construct sewers to prevent the aquifer from being polluted by sewage. The APA fees will be collected for no more than 20 years. While Ms. Smith is correct that the use of the water is not being regulated by the fees, she fails to acknowledge that the pollution and continued degradation of the aquifer is being regulated via the fees. The fees imposed by the County are indeed regulatory.

The second factor requires that the money generated be used only for regulatory purposes. *Covell,* 127 Wn.2d at 879. Eighty-one cents of every dollar generated by the APA fees are spent on sewer construction. Sewer construction directly relates to the protection of the aquifer from further degradation. Seventeen cents of every dollar is used for administrative and operational expenses. The money collected is being spent as authorized by the ballot proposition. The money is being used for the regulatory purpose of protecting and preserving the aquifer and the sole source of water in the area.

The third factor requires a direct relationship between the fee charged and the services received by those paying

the fee. *Covell*, 127 Wn.2d at 879. All individuals within the APA are subject to the fees. If an individual within the area is not connected to certain sewer systems, they are subject to the sewage disposal fee as well. The individuals are paying the fee to preserve the aquifer that is their sole source of water. Ensuring a clean source of drinking water provides a direct benefit to everyone who receives water from the aquifer. Thus, a direct relationship exists.

Additionally, when one compares the facts of this case to the facts of other cases which determined whether fees imposed by governmental entities were regulatory fees or taxes, it is clear that the charges at hand are regulatory fees. In *Covell*, the court determined that a city ordinance imposing a street utility charge was a tax. *Covell*, 127 Wn.2d at 888-89. The City of Seattle imposed a fee to residents in order to construct, maintain, operate and preserve streets. *Id.* at 876-77. The court determined that the charges were for the purpose of funding and did not directly relate to any service. *Id.* at 884-85.

In *Thurston County Rental Owners Ass'n v. Thurston County*, 85 Wn. App. 171, 178-79, 931 P.2d 208, *review denied*, 132 Wn.2d 1010 (1997), Division Two held that the County's imposition of permit fees for the construction of septic systems was a regulatory fee. The County required permits for construction of septic systems in order to protect the groundwater. *Id.* at 175-76. In that case the court determined that the fees were part of a plan to regulate septic systems. *Id.* at 179.

In *Hillis* II, the court held that a connection charge to the city's water system was a regulatory fee. *Hillis* II, 105 Wn.2d at 300. The court determined in that case that the charge was part of an overall plan to regulate the use of water. *Id.* at 299.

In *Teter v. Clark County*, 104 Wn.2d 227, 228-29, 704 P.2d 1171 (1985), a fee was imposed on property owners to finance flood control operations. In that case the court determined that the charges related to regulation and control of storm and surface waters. *Id.* at 239. As a result,

the court determined that the charges were regulatory fees. *Id.*

In *Hillis Homes, Inc. v. Snohomish County*, 97 Wn.2d 804, 805-06, 650 P.2d 193 (1982) (*Hillis* I), a fee was imposed on new residential subdivisions for parks, schools, road, and fire protection. In that case, the court determined that the charges were unconstitutional taxes. *Id.* at 808. The court found that the charges were not imposed for any regulatory purpose. *Id.* at 810.

The case at hand is much analogous to *Thurston*, *Hillis* II, and *Teter*. The charge at issue in all of these cases dealt with water or septic system regulation. *Thurston* and *Teter* did not impose charges which were based upon water or septic usage. All of the charges benefited the public by furnishing clean drinking water. Thus under the *Covell* factors and case law, the APA fees are regulatory fees and not taxes.

Ms. Smith next contends that the APA charge is a tax which violates due process. To sustain a tax against a due process challenge there must be a reasonable relationship between the event taxed and the benefit conferred. *Dravo Corp. v. City of Tacoma*, 80 Wn.2d 590, 598, 496 P.2d 504 (1972). However, contrary to Ms. Smith's assertions, the APA fee is not a tax but rather a regulatory fee. Thus, the test set forth in *Dravo* does not apply to this case. Even if we did apply the test, the APA charge directly benefits property owners in the APA area, including Ms. Smith, by ensuring their sole source of water is clean. Ms. Smith's argument fails.

In order for Ms. Smith to sustain a due process claim against the charge, she must first establish a legitimate claim of entitlement. *Haberman v. Washington Pub. Power Supply Sys.*, 109 Wn.2d 107, 142, 744 P.2d 1032, 750 P.2d 254 (1987). A legitimate claim of entitlement is either a vested liberty or property right. *Id.*

A vested right entitled to protection under the due process clause:

must be something more than a mere expectation based upon an anticipated continuance of the existing law; it must have become a title, legal or equitable, to the present or future enjoyment of property, a demand, or a legal exemption from a demand by another.

[*In re Marriage of*] *MacDonald*, 104 Wn.2d [745], . . . 750, [709 P.2d 1196 (1985)](quoting *Godfrey v. State*, 84 Wn.2d 959, 963, 530 P.2d 630 (1975)).

*Caritas Servs., Inc. v. Department of Soc. & Health Servs.*, 123 Wn.2d 391, 414, 869 P.2d 28 (1994) (emphasis omitted). The APA charge does not involve any vested right. It does not affect her future enjoyment of property; on the contrary, it protects Ms. Smith's future enjoyment of property by ensuring her water source is preserved.

The only other way Ms. Smith could establish a due process claim is by proving the charge is a violation of police power. An ordinance enacted pursuant to a statute is constitutional as a valid exercise of police power so long as there is a substantial relationship to the public safety, health, morals or general welfare. *Duckworth v. City of Bonney Lake*, 91 Wn.2d 19, 26, 586 P.2d 860 (1978). In the present case the APA charge is a valid exercise of police power. The charge was instituted to preserve and protect the Spokane-Rathdrum Aquifer, the sole source of water for the area. Clean water certainly bears a substantial relationship to health and the general welfare of the public. Valid exercises of police power do not violate due process. *Cougar Bus. Owners Ass'n v. State*, 97 Wn.2d 466, 479, 647 P.2d 481, *cert. denied*, 459 U.S. 971 (1982).

Due process limits a governmental entity's power to collect fees to a collection of funds which are necessary for regulatory purposes. *Thurston County*, 85 Wn. App. at 184. The County collects the APA charges in order to regulate the area's sole water source. The charges do not violate due process.

Ms. Smith also contends that the APA fees violate equal protection because some individuals who receive their

water from the City of Spokane do not pay the APA charges. Both parties agree that this claim should be analyzed under the rational basis test. Under the rational basis test, legislation is constitutional if: (1) the legislation applies alike to all members of a designated class; (2) reasonable grounds exist for distinguishing between class members and non-class members; and (3) the classification bears a rational relationship to the purpose of the legislation. *Thurston County*, 85 Wn. App. at 185.

The classification in this case is property owners living in the aquifer protection area and those living outside of that area. All property owners within the aquifer protection area must pay the APA charges. Since the charge applies to all members within a class in the same manner, the first prong of the rational basis test is satisfied.

Ms. Smith's argument centers around the second prong, whether reasonable grounds exist for distinguishing class members from non-class members. She argues that because certain property owners in Spokane County receive water from the city utility, but do not pay the APA charge, that classification is unconstitutional. So long as a classification is not arbitrary or capricious, there is no denial of equal protection. *Forbes v. City of Seattle*, 113 Wn.2d 929, 944, 785 P.2d 431 (1990). Legislative bodies have broad discretion in establishing classifications for social and economic legislation. *Id.* A board of county commissioners may be considered a legislative body. *See H&B Communications Corp. v. City of Richland*, 79 Wn.2d 312, 316, 484 P.2d 1141 (1971).

The property owners within the APA reside over aquifer sensitive areas, while the property owners out of the APA do not. The aquifer sensitive areas were designated as such because of their potential for polluting the aquifer. As a result, the County devised a plan to protect the aquifer which recommended the extension or construction of a central sewer system in certain areas of Spokane County. The areas indicated in the plan were those which could affect the water source. Thus, the County had reasonable

grounds for distinguishing between property owners within the APA and those out of the APA. The classification was not arbitrary or capricious, thus there is no denial of equal protection.

■ Finally, the APA charges must rationally relate to the purpose of the charges. As stated previously, the APA charges were implemented to preserve and protect the sole source of water in the area. The money collected has been used for sewer construction in the area to limit the pollutants invading the water source. The APA charges rationally relate to the purpose of protecting and preserving the water source. The APA charges do not violate equal protection.

■ Ms. Smith also claims the APA charges constitute unlawful special assessments. Special assessments support the construction of a local improvement that are appurtenant to specific property and bring a benefit to that property which is substantially more intense than the benefit conferred on other property. *Bellevue Assocs. v. City of Bellevue*, 108 Wn.2d 671, 674-75, 741 P.2d 993 (1987). The APA charges are collected for sewer construction throughout the entire APA area. The benefit of the sewer construction directly impacts everyone in the APA area because all property owners in this area rely on the aquifer for water. No one property owner benefits more than any other by having clean water. The funds collected are combined with other funds to construct sewers; thus, they do not meet the definition of a special assessment. *See Covell*, 127 Wn.2d at 889.

Ms. Smith bases her argument on the assertion that 81 percent of APA charges are used to reduce special assessments. The facts in this case do not support her assertion. Each dollar collected is spent as follows: 17 cents on administration and operations, 81 cents on sewer construction and 2 cents to the Spokane County Health District. There is no support that any amount of the money collected goes to a special assessment. Since no special assessment exists, there is no violation of the special assessment restrictions.

■■ Ms. Smith claims the APA charge constitutes an unlawful taking. A taking occurs when a private property owner pays the cost of a public improvement in an amount which exceeds the value of the benefits which accrue to said property owner. *Hargreaves v. Mukilteo Water Dist.*, 43 Wn.2d 326, 332, 261 P.2d 122 (1953). No taking occurred in the present case because the benefit of clean water is not exceeded by the APA charge incurred by Ms. Smith.

Additionally, Ms. Smith bases her argument on the fact that the APA charge is a special assessment. As stated in the previous issue, the APA charge is not a special assessment. The APA charges received are used for sewer construction within the APA area. There is no evidence to support Ms. Smith's assertions that the funds generated are used for general facilities charges. No unlawful taking has occurred.

■■ Ms. Smith also claims the APA charges violate her right to fair, reasonable, and nondiscriminatory water rates. Utility rates imposed by a municipality are presumed to be reasonable. *Faxe v. City of Grandview*, 48 Wn.2d 342, 352, 294 P.2d 402 (1956). Rates will be upheld unless it can be established that they are excessive and disproportionate to the services rendered. *Teter*, 104 Wn.2d at 237. The appellant has the burden to establish the rates are unreasonable. *Id.*

■■ The APA charges are $1.25 per month or $15.00 per year for water customers within the APA, and $1.25 per month or $15.00 per year for sewer customers not connected to a city sewer. Ms. Smith contends that these charges are unreasonable because residents of the West Plains area of Spokane receive water from the City but do not pay the APA charges. She also contends residents of the Whitworth water district do not pay the APA fees. Rates need not be absolutely uniform. *Teter*, 104 Wn.2d at 238. Different classes of customers may be charged different rates as long as the classifications are reasonable. *Hillis* II, 105 Wn.2d at 301. The rates within each class must be the same. *Teter*, 104 Wn.2d at 238. In this case individuals

within the APA, an area defined by the aquifer sensitive area, are charged the fee in order to protect and preserve water. The County determined that the APA area was the largest source of pollutants to the aquifer. Thus, there is a reasonable basis for the classification of residents who pay the APA charges. The rates within the classes are uniform. The classifications are reasonable.

■ The actual rates charged are also reasonable. The law requires only a practical basis for the rates, not mathematical precision. *Teter*, 104 Wn.2d at 238. Each resident within the APA pays $15 per year for water and $15 per year if they are not connected to the appropriate sewer systems. The county uses the money to construct new sewer systems in order to prevent pollution and degradation of the aquifer. The fees will be charged for only 20 years. The APA was instituted because of the pollution and degradation which was occurring to the aquifer, which was and is the sole source of water in the area. Ms. Smith has not met her burden of showing that the fees are unreasonable.

■ Ms. Smith contends the APA charges violate the principles of tax fairness. As discussed in the first issue, the APA charge constitutes a regulatory fee not a tax under the factors set forth in *Covell v. City of Seattle*, 127 Wn.2d 874, 905 P.2d 324 (1995). Since the charge is not a tax, the principle of tax fairness does not apply.

Ms. Smith also claims that the APA projects cannot be financed via the APA charges. The Legislature authorized counties to impose fees in aquifer protection areas to fund specific projects, including the preparation of a comprehensive plan to protect subterranean water, and the construction of sewers. RCW 36.36.040. Ms. Smith contends the APA charges are being used to finance projects which should be funded through general taxation. To support her argument, she relies on *Heavens v. King County Rural Library Dist.*, 66 Wn.2d 558, 564-65, 404 P.2d 453 (1965), which considered the constitutionality of a statue that authorized a local improvement district for the construction

of public libraries. Prior to the new statute, rural libraries were financed by general taxation. *Id.* at 560. The court considered the constitutional differences between a special assessment for a local improvement and an ad valorem tax levied for the benefit of an entire district. *Id.* at 563. The court held that while the construction of a library is a legitimate exercise of the government, a library does not enhance the property value of the surrounding real estate, and thus a special assessment should not be used to finance such construction. *Id.* at 566.

This case does not support Ms. Smith's contention that general improvements should be funded by general taxation. In *Heavens* the court was analyzing a special assessment. As discussed previously, the APA charge is not a special assessment. Nothing in *Heavens* requires that sewer construction be funded via a general tax.[1]

This argument appears to be another attempt to classify the APA charge as a special assessment. RCW 36.36.040 authorizes the imposition of fees for specific projects within an APA area. The ballot proposition listed the intended uses of the APA funds. The intended uses on the ballot fell within the permitted uses in the statute. The use of APA fees is appropriate.

Ms. Smith further claims the APA fees undermine the one percent levy limitation. Washington's Constitution provides that "[e]xcept as hereinafter provided and notwithstanding any other provision of this Constitution, the aggregate of all tax levies upon real and personal property by the state and all taxing districts now existing or hereinafter created, shall not in any year exceed one per centum of the true and fair value of such property in money." Const. art. VII, § 2. This limitation does not apply when three-fifths, or 60 percent of the voters approve such a levy. *Id.*

▬ The levy limitation is not applicable in this case. First, as discussed above, the APA charge is a regulatory

---

[1]It is interesting to note that Ms. Smith initially argued that the APA charge was an unconstitutional tax. Now she appears to argue that a general tax is the only way the County could fund sewer construction.

fee not a tax. Since the charge is not a tax, the levy limitation does not apply. Secondly, even if the limitation applied, the APA was approved by more than 70 percent of the voters. Finally, Ms. Smith does not submit any facts which would establish that the APA charge, if it were a tax, is of an amount which exceeds the one percent limitation.

Ms. Smith also claims the APA funds collected are being used for unauthorized purposes. Ms. Smith contends that the use of APA revenue for administration and operations expenses constitutes an unauthorized use of funds. Seventeen percent of the APA revenue is used to pay for administrative and operations expenses which entail: (1) salaries for APA employees; (2) office supplies; (3) the APA's proportionate share of operating the General Fund Department; and (4) the APA's proportionate share of debt service on the outstanding bond for the Public Works Building.

 ██ Ms. Smith is correct in pointing out that neither the ballot proposition, nor RCW 36.36.040, which lists permitted uses for funds, lists administrative or operations expenses as a use for these revenues. However, RCW 36.36.030 does allow a county that implements APA fees to either contract with an existing public utility to collect the fees, or collect the fees itself. Although the statute does not expressly grant the authority for administration and operation expenses, it is recognized that when a statute expressly grants the general authority to achieve a lawful objective, it implies the right to perform such acts as are reasonably necessary to achieve the objective. *Foundation for the Handicapped v. Department of Soc. & Health Servs.*, 97 Wn.2d 691, 698-99, 648 P.2d 884 (1982), *cert. denied*, 459 U.S. 1146 (1983). In RCW 36.36.030 the Legislature gave the APA the implied power to use a portion of APA revenue to pay for the incidental costs of billing and collecting the APA fees. *See Hillis* II, 105 Wn.2d at 298 (public utility district had the implied authority to impose a connection charge in order to collect rates and charge for water services). The State Supreme Court noted that construing a statute to permit the right to collect a fee from citizens,

but not the authority to perform acts necessary to collecting said fees was absurd. *Foundation*, 97 Wn.2d at 699. Although the ballot proposition and RCW 36.36.040 are silent as to whether the County may incur operation and administration expenses, the statue enables the County to collect the fees. Thus, statutory construction implies the authority to use a portion of the revenue for such expenses.

Ms. Smith also appears to argue that the County should not keep separate accounts for APA funds. RCW 43.09.210 requires that separate accounts be kept for each department, public improvement, undertaking, institution, and public service industry. The APA activities would certainly be considered a public improvement or undertaking. APA revenues are kept in a separate fund of the County. Additionally, the APA must pay for costs incurred by services performed by County departments in relation to the collection and administration of APA fees. *See* RCW 43.09.210. The operation and administration expenses are not unauthorized uses of APA revenue.

██ Ms. Smith also contends that the use of APA funds to pay general facilities charges and reduce local assessments violates the constitution. Ms. Smith does not cite to any authority to support this contention and thus, this court may choose not to consider them. *McKee v. American Home Prods. Corp.*, 113 Wn.2d 701, 705, 782 P.2d 1045 (1989). Further, the record does not support her allegations that APA revenue is being used to pay general facilities charges or reduce any local assessments.

██ ██ Finally, Ms. Smith contends that article VII, § 1 and article VIII, § 7 have been violated. Article VII § 1 deals with taxation. Since the APA charges are regulatory fees and not a tax, this part of the constitution does not apply. Article VIII, § 7 prohibits county money from being loaned or gifted to a private interest. No APA revenue is loaned or gifted to private entities. Eighty-one percent of the revenue is used for sewer construction. Seventeen percent is used for operation and administration expenses. Two percent is paid to the County Health Department for

water quality monitoring. In any event when public funds are used for a recognized government purpose then no unconstitutional gift occurs. *Citizens for Clean Air v. City of Spokane*, 114 Wn.2d 20, 39, 785 P.2d 447 (1990). The APA revenue is used to construct a sewer to preserve and protect the drinking water and hence the public health and safety. The use of APA funds does not violate the constitution.

She also contends the County should be required to actively pursue delinquent fees. The County has not been fully successful in collecting APA charges from all property owners within the APA. As of 1995, the County has around $1.3 million in delinquent fees. In response to delinquent accounts, the County regularly sends delinquency statements to property owners. The County has filed liens on some property for which a delinquency exists.

■ Persons charged with handling public funds are held strictly accountable for those funds. *Pierce County v. Newman*, 26 Wn.2d 63, 66, 173 P.2d 127 (1946). Ms. Smith alleges that the County's failure to actively collect delinquent fees constitutes a gift of public funds. The County has collected $23.6 million in APA revenue from 1986 to 1995. As of 1996 the County listed approximately $1.3 million in delinquent fees. The delinquency is roughly five percent of the revenue collected. A five percent delinquency rate is not sufficient to establish that the County has failed to adequately collect the funds.

■ The County has taken measures to lessen the existing delinquency. The County sends out notices when the APA fees are not paid on a piece of property. Upon sale of the property, a title company can obtain this information. Under RCW 36.36.045 the County may place a lien on the property for delinquent APA fees. In 1990, the County filed 20 liens. The County has not instituted any lawsuits or collection actions for these fees. The table of delinquencies establishes that the County has been successful in collecting delinquent fees.

Ms. Smith argues that the County's failure to institute legal actions or file additional liens is improper. However,

Ms. Smith fails to present any facts as to why such actions would be a mandatory or even preferred manner for collecting delinquent fees. It is important to note that the fees are either $15 or $30 a year. Thus, even if a property owner never paid the fee, the amount of delinquency over ten years would not exceed $300. The County should not be deemed to be mishandling funds for failure to institute legal action against property owners in these circumstances, particularly in view of the lack of any showing that more aggressive collection efforts would be cost effective.

Ms. Smith also contends that the statute of limitations will preclude the County from collecting delinquent fees that were due prior to 1994. Statutes of limitations do apply to municipalities when they are acting in a proprietary manner. *City of Tacoma v. Hyster Co.*, 93 Wn.2d 815, 821, 613 P.2d 784 (1980). Furnishing sewer services is a proprietary function. *City of Algona v. City of Pacific*, 35 Wn. App. 517, 520, 667 P.2d 1124, *review denied*, 100 Wn.2d 1028 (1983). However, the statute of limitations is not applicable when enforcing a delinquent account. *Home Owners' Loan Corp. v. City of Tacoma*, 4 Wn.2d 166, 171, 102 P.2d 832 (1940). Thus, it appears that the statute of limitations will not prevent the County from enforcing the delinquent accounts.

Although, as the trial judge noted, the County could increase its collection efforts, Ms. Smith did not put forth any evidence which establishes what the County could do to be more successful in reducing the delinquencies. The evidence establishes that the County has been successful in decreasing the delinquency.[2]

Ms. Smith also claims the court erred by dismissing the City of Spokane as a defendant in this case. In her com-

---

[2]A review of the delinquency statistics states that the 1986 delinquencies have decreased from $192,718 to $39,247; 1987 from $355,916 to $51,528; 1988 from $438,723 to $63,075; 1989 from $383,931 to $77,245; 1990 from $401,110 to $92,772; 1991 from $387,611 to $113,180; 1992 from $372,649 to $136,239; 1993 from $354,120 to $171,595, and 1994 from $357,401 to $227,559.

plaint, Ms. Smith alleged the existence of an agreement between the City and County by which the City was to receive $500,000 in APA revenue each year from the County. She further alleged that in 1992 the County refused to pay the City the $500,000. These were the only allegations made which involved the City. The City moved to dismiss pursuant to CR 12(b)(6). The court converted the CR 12(b)(6) motion to a summary judgment motion and dismissed the City. This court reviews that action under a summary judgment standard.

Ms. Smith's complaint was filed December 12, 1995. The record reflects that no agreement existed between the City and the County until June 1996. In June of 1996, the City and County did enter into an agreement where the County would distribute $500,000 of APA revenue to the City each year. No agreement existed prior to 1996. Since there was no evidence of any agreement, the court properly dismissed the City from the lawsuit.

Finally, Ms. Smith contends she should be awarded attorney fees and costs under the common fund/common benefit theory, 42 U.S.C § 1988 and private attorney general theories.

The common fund theory allows for attorney fees to the prevailing party when the litigant preserves or creates a common fund for the benefit of others. *Covell v. City of Seattle*, 127 Wn.2d 874, 891, 905 P.2d 324 (1995). Since Ms. Smith is not the prevailing party she is not entitled to fees under this theory.

42 U.S.C. § 1988 provides for attorney fees with respect to certain federal claims. Since Ms. Smith did not prevail on any federal claims, she is not entitled to attorney fees under this theory.

Washington has rejected the private attorney general theory for attorney fees. *Allingham v. City of Seattle*, 109 Wn.2d 947, 953, 749 P.2d 160, 757 P.2d 533 (1988), *overruled on other grounds by Presbytery of Seattle v. King County*, 114 Wn.2d 320, 335, 787 P.2d 907, *cert. denied*, 498

U.S. 911 (1990). Thus, Ms. Smith is not entitled to fees under this theory.

We affirm and deny Ms. Smith's request for attorney fees.

KURTZ and BROWN, JJ., concur.

Review denied at 135 Wn.2d 1007 (1998).